PRICE v. BOARD OF CHOSEN FREEHOLDERS OF PASSAIC COUNTY.

(Circuit Court of Appeals, Third Circuit. August 1, 1899.)

No. 7, March Term, 1899.

1. MUNICIPAL CORPORATIONS—LETTERS SOLICITING PLANS FROM ARCHITECTS—CONSTRUCTION.

A county board, having statutory authority to build a court house, issued a letter to architects, inviting the submission of plans in competition, stating that the board had full power to select an architect, and to erect the building, and offering certain premiums to be given to the authors of the six designs "which shall be selected by the commissioners." It further stated that the board had invited a third person to act as its professional adviser "in the conduct of the competition and in the examination of the designs submitted," to whom such designs should be sent, and that a number would be selected by him, and handed over to the board, with his comments and recommendations. *Held*, that such letter did not constitute an agreement with a competitor that the right of selection should be confined to the designs recommended by such person.

2. SAME—SELECTING PLANS FOR PUBLIC BUILDING—POWERS OF BOARD.

A board having statutory authority to select plans for a public building may voluntarily, in the exercise of its discretion, confine its choice to one of a number selected by others, but it has no power to bind itself in advance to do so.

In Error to the Circuit Court of the United States for the District of New Jersey.

Julius J. Frank, for plaintiff in error.

Dewitt C. Bolton, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge. This is a writ of error brought to review the action of the circuit court in sustaining a demurrer and entering judgment in favor of the defendant in a suit brought by Bruce Price, the plaintiff in error, against the board of chosen freeholders of the county of Passaic. In pursuance of chapter 285 of the Laws of 1895 of New Jersey, whereby the board of chosen freeholders of counties were, inter alia, authorized to appoint three commissioners, "who shall have power to erect on the property now owned by said county such buildings as they may deem suitable for the purposes of this act," the board of chosen freeholders of Passaic county named certain commissioners to erect a court house at Paterson, N. J. These commissioners invited Prof. William R. Ware, of Columbia College, to act as "their professional adviser, both in the conduct of the competition and in the examination of the designs submit-

led," and issued a circular to architects, dated June 1, 1896, requesting them to submit plans. In pursuance thereof, the plaintiff, with some fifty others, prepared and submitted designs for a court house. His plans, with those of eleven others, were selected by Prof. Ware, and recommended to the commissioners. The latter, from the thirty-eight additional plans, selected one for the building, and its designer as the architect, and awarded premiums of $300 each to five other of said thirty-eight. The plaintiff alleges that this was in violation of the agreement embodied in said circular; that by its terms the commissioners were confined in their choice to the twelve selected by Prof. Ware; that by the commissioners going outside said number the plaintiff was damnified, and a right of action accrued to him to recover the expense incurred in the preparation of his plans. Assuming, for present purposes, that any special damage was done the plaintiff, who, it will be observed, was not necessarily one of the six to be selected, two questions yet remain: First, whether there was a contract to select from the twelve chosen by Prof. Ware; and, secondly, if so, could the commissioners thus delegate their delegated authority? On the first question we think the letter cannot be read to bind the commissioners to confine themselves to the choice made by Prof. Ware. The first clause asserts in the commissioners themselves "full power to select an architect, and to proceed with the construction of the building." In the same clause they define Prof. Ware's relation, namely, they have invited him to act with them as "their professional adviser" in "the conduct of the competition and in the examination of the designs submitted." He is to act with them, not for them; and he is an adviser, not an arbiter. The next clause, far from conferring on their adviser the right and duty of deciding, expressly confines the power of choice to the commissioners, viz. "and they offer to give to the authors of the six designs which shall be selected by the commissioners the following prizes,"—a thing which, it is to be noted in passing, they have done, and the doing of which forms the gravamen of the plaintiff's complaint. The only possible ground for contending that the commissioners contracted to select the architect and prize winners from Prof. Ware's preliminary selection is found, if at all, in the clauses following:

"The designs will be sent to Prof. Ware, who will proceed to examine them. All drawings or sets of drawings not conforming to the requirements will be thrown out. From the remainder he will select those which he finds the best among them, not less than twelve in number, which he will hand over to the commission, with his comments, and any recommendations he may have to make. If the commission finds itself unable to choose upon the evidence before it between two or more of the competitors, it will invite the competitors among whom its choice lies to present, under the instructions of the commission, such further explanations or drawings as the nature of the questions at issue may require."

We search in vain therein for any provision which restricts the commission, or limits or abridges its field of selection. It is true, Prof. Ware was to make a preliminary choice of at least twelve, and "hand them over to the commission, with his comments and any recommendations he may have to make," but these were duties in line with his relation as professional adviser, and such comments or

recommendations could not, unless expressly stipulated, be held to abridge or limit the general powers vested in the commissioners. Moreover, the paper as a whole shows the commissioners were to have all the plans before them. For example, all plans were to be sent originally to Prof. Ware alone, but when they were returned they were to "be returned by the commissioners to their authors, after the award has been made." That the commissioners were to have all the plans before them is also shown by their agreement not to adopt any original suggestion of an unsuccessful competitor without compensation. Indeed, we think the whole scope of the paper shows clearly that Prof. Ware was the professional adviser of the board, and that neither expressly nor impliedly did the commissioners restrict themselves or limit the field of choice to those whom he should recommend. Then, too, if the paper were read or construed as a surrender on the commissioners' part to Prof. Ware of the right and duty of selection which the law intrusted to them, it was ultra vires. As was well said in Cope v. Hastings, 183 Pa. St. 322, 38 Atl. 720:

"They might voluntarily or in the exercise of their discretion limit their choice to one of eight, chosen by others as more competent, but they could not bind themselves to do so. The discretion which was free at first must remain so, or up to the time of final judgment and action."

Being, therefore, of the opinion that on both grounds the demurrer was rightly sustained, the judgment of the court is affirmed.